UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONG-JULIA SUN LEE,

                   Plaintiff,

    -against-

ANTHEM INC. f/k/a The WellPoint
Companies, AMERIGROUP
CORPORATION, AMERIGROUP
NEW YORK, L.L.C. f/k/a CarePlus, L.L.C.,
KARLA TAVERAS, MARITZA VILLA
DE GUTIERREZ, and MARISOL VARGAS,
individually and as aider and abettors,

                   Defendants.
------------------------------------------------------------X

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff DONG-JULIA SUN LEE, (hereinafter "Plaintiff"), by and through her attorneys, FRANK & ASSOCIATES, P.C., brings this action against Defendants ANTHEM INC. ("Anthem") formerly known as THE WELLPOINT COMPANIES, INC. ("WellPoint"), AMERIGROUP CORPORATION, AMERIGROUP NEW YORK, L.L.C., formerly known as CarePlus, L.L.C., KARLA TAVERAS ("Taveras"), MARITZA VILLA DE GUTIERREZ ("De Gutierrez"), and MARISOL VARGAS ("Vargas") and respectfully alleges upon information and belief:

## NATURE OF CLAIMS

1.    This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the American with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*; and other appropriate rules, regulations, statutes and ordinances.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

3.      This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the events or omissions giving rise to the claim for unlawful employment practices occurred in Kings County, New York and Queens County, New York.

4.      Plaintiff timely filed a charge of discrimination based on age, disability, and retaliation with the Equal Employment Opportunity Commission ("the EEOC") on or about October 17, 2014, complaining of the acts of discrimination alleged herein.

5.      Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue, dated May 29, 2015, attached hereto as Exhibit A (Charge No. 520-2015-00203).

6.      Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, in accordance with N.Y.C. Admin. Code § 8-502(c).

## THE PARTIES

7.      Plaintiff resides at 65-22 Parsons Boulevard, Apartment 1-A, Flushing, New York 11365.  At all times relevant to the Complaint, Plaintiff has lived and was employed within the Eastern District of New York.

8.      Plaintiff was at all times relevant herein an "employee" within the meaning of 42 U.S.C. § 12111(4), and a "person" within the meaning of 29 U.S.C. § 630, N.Y. Exec. L. § 292(1) and N.Y.C. Admin. Code § 8-102(1).

2

9.     At all times relevant to the Complaint, Plaintiff was and is over the age of forty (40) and therefore protected from age discrimination pursuant to 29 U.S.C. § 631, N.Y. Exec. L. § 296(3-a) and N.Y.C. Admin. Code § 8-107(1)(a).

10.     At all times relevant to the Complaint, Plaintiff was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8), and suffered from a "disability" within the meaning of N.Y. Exec. L. § 292(21) and N.Y.C. Admin. Code § 8-102(16),

11.     Defendant Anthem, formerly known as WellPoint, Inc. is an Indiana corporation with its headquarters at 120 Monument Circle, Indianapolis, Indiana. Anthem is one of the largest health benefit companies in the United States.  WellPoint changed its name to Anthem in or around December 2014 and became Plaintiff's named employer at that time.

12.     At all times relevant to the Complaint, Anthem was an "employer" within the meaning of the ADAAA, the ADEA, the NYSHRL and the NYCHRL.

13.     Upon information and belief, at all times relevant to the Complaint, Anthem employed more than twenty (20) employees.

14.     Amerigroup Corporation is now a wholly owned subsidiary of Anthem. Amerigroup Corporation was a joint employer of Plaintiff.  Amerigroup Corporation manages publicly funded health care programs.  Amerigroup Corporation was acquired by WellPoint in or around December 2012.  Amerigroup Corporation is a Delaware corporation registered with the New York State Department of State as an Active Foreign Business Corporation with its principal offices located at 4425 Corporation Lane, Virginia Beach, Virginia 23462.

3

15.    At all times relevant to the Complaint, Amerigroup Corporation was an "employer" within the meaning of the ADAAA, the ADEA, the NYSHRL, and NYCHRL.

16.    Upon information and belief, at all times relevant to the Complaint, Amerigroup Corporation employed more than twenty (20) employees.

17.    Amerigroup New York, L.L.C., formerly known as CarePlus, L.L.C., is a wholly owned subsidiary of Anthem and former owned subsidiary of WellPoint, and was a joint employer of Plaintiff.  Amerigroup New York, L.L.C. is a domestic corporation registered with the New York State Department of State with its principal offices located at 9 Pine Street 14th Floor, New York, New York 10005.

18.    At all times relevant to the Complaint, Amerigroup New York, L.L.C. was an "employer" within the meaning of the ADAAA, the ADEA, the NYSHRL and the NYCHRL.

19.    At all times relevant to the Complaint, Amerigroup New York, L.L.C. employed more than twenty (20) persons at all times herein.

20.    Defendants Anthem, Amerigroup Corporation, and Amerigroup New York, L.C.C.[1] are business entitled that, both individually and collectively, are engaged in activities performed through a unified operation or control, for common business purposes.

21.    Defendant Taveras was Plaintiff's direct supervisor for Amerigroup, WellPoint, and/or Anthem and had power and control over Plaintiff's employment. Taveras actually participated in the conduct giving rise to the claims of discrimination

---

[1] Amerigroup Corporation and Amerigroup New York, L.L.C. will be referred to as "Amerigroup" hereinafter.

4

herein, and is liable for the discriminatory and retaliatory conduct complained of herein as an "aider and abettor" and/or "employer" under N.Y. Exec. L. § 296(6).

22.     Defendant Maritza Villa De Gutierrez was an officer of Amerigroup, WellPoint, and/or Anthem's Human Resources department and actually participated in the conduct giving rise to the claims of discrimination herein.  De Gutierrez exercised power and control over Plaintiff's employment at Anthem and is liable as an "aider and abettor" of unlawful conduct under NYSHRL § 296(6).

23.     Defendant Marisol Vargas was formerly Amerigroup's Director of Human Resources, responsible for hiring Plaintiff and mishandling Plaintiff's needed accommodations.  She became the Head of Anthem's Retention Department in New York in or about May 2014.  Vargas exercised power and control over Plaintiff's employment at Amerigroup, WellPoint, and/or Anthem.  Vargas actually participated in the conduct giving rise to the claims of discrimination herein, and is liable as an "aider and abettor" of unlawful conduct under NYSHRL § 296(6).

24.     This Court has personal jurisdiction over the Defendants under New York's long-arm statute, New York Civil Procedure and Law and Rules (C.P.L.R.) § 302(a)(2) because the Defendants committed tortuous acts within New York by discriminating against Plaintiff based on her age and disability, as demonstrated below.

## FACTUAL BACKGROUND

25.     Plaintiff was born in South Korea on March 12, 1954 and is currently sixty-one (61) years old.

26.     In or around December, 2008, Plaintiff began working for Amerigroup as a Retention Associate I in its Manhattan office located at 360 West 31st Street, New York, New York (hereinafter "the Manhattan Office").

27.     Plaintiff's responsibilities as a Retention Associate I included contacting Korean-speaking Amerigroup members to remind them to recertify for Medicaid benefits and Child Health Plus, taking inbound and outbound calls from Korean-speaking members and responding to their questions regarding Medicaid and Child Health Plus, and providing instructions to Korean-speaking members on how to renew Medicaid and Child Health Plus.

28.     Plaintiff was the first Retention Associate hired to work specifically with Korean-speaking Amerigroup members.

29.     At all relevant times while working for Defendants, Plaintiff has performed her job in an exemplary manner and has been a top performing employee.  In fact, Plaintiff was named the top performing in-house representative in Defendants' Manhattan office for the majority of months in 2009, 2010, and 2011.

30.     Plaintiff was also a highly innovative employee who made significant contributions to Amerigroup.  In or around 2009, Plaintiff made the suggestion to Defendants to establish a hotline for Korean-speaking members so that they could immediately speak to her without having to first converse with an English-speaking representative.  Amerigroup adopted Plaintiff's idea and established a hotline for Korean-

6

speaking members and Chinese-speaking members, which proved to be highly successful in increasing Amerigroup's Asian membership base.

## REASSIGNMENT FROM THE MANHATTAN OFFICE TO THE BROOKLYN OFFICE

31.     In or around May 2012, Amerigroup transferred Plaintiff from its Manhattan office to its Brooklyn office, located at 241 37th Street, Brooklyn, New York (hereinafter "the Brooklyn Office"). Defendant Taveras became Plaintiff's direct supervisor.

32.     Plaintiff's daily commute, via public transportation, from her home in Flushing to the Brooklyn Office took approximately two (2) hours each way because Plaintiff did not own a vehicle.

33.     In or around August 2012, Plaintiff applied for an open Korean Field Representative position at Amerigroup's Flushing office located at 136-52 39th Avenue, Flushing, New York (hereinafter "the Flushing Office").  Plaintiff desired to work in the Flushing Office because her commute would be drastically reduced, as the office is only about fifteen (15) to twenty (20) minutes from Plaintiff's home by public transportation and approximately forty (45) minutes by foot.

34.     In or around September 2012, Plaintiff was hired for the available Korean Field Representative position in Flushing, and told that her reassignment would take place on or around September 24, 2012.  However, for unexplained reasons, Defendants failed or refused to transfer her to the Flushing Office.

35.     Plaintiff remained in the Brooklyn Office as a Retention Associate until February 27, 2013, when she was seriously injured in an auto-pedestrian accident.

## THE ACCIDENT

36.     On or around February 27, 2013, Plaintiff was struck by a motor vehicle in front of the Brooklyn Office while walking to work.  Plaintiff lost consciousness and was rushed to the hospital.  As result of the accident, Plaintiff endured serious injuries to her right knee, shoulder, and her back.  Plaintiff was required to undergo two (2) surgeries due to her injuries sustained in the accident: one to repair her right knee and the other to repair her shoulder.

37.     Due to her injuries sustained in the accident, WellPoint, who had acquired Amerigroup at that point, placed Plaintiff on medical leave for six (6) months, lasting approximately from around the end of February 2013 until September 3, 2013.

38.     Plaintiff attended physical therapy for her back injury, but the crippling pain from the injury continues to this day.  She regularly visits her physician, located in Flushing, because of the persistent, severe pain to the damaged parts of her body.

39.     In or around June 2013, while Plaintiff was on disability leave, Defendant Vargas hired Cindy An, a Korean-speaking woman who, upon information and belief, is in her late thirties and is not disabled, to fill Plaintiff's supposed position in the Flushing Office.

## PLAINTIFF'S RETURN TO WORK AND INITIAL REQUEST FOR AN ACCOMMODATION

40.     Plaintiff returned to work in or around September 2013, at which time she was finally assigned to the Flushing Office.

41.     Taveras remained Plaintiff's supervisor at the Flushing Office.

42.     Plaintiff continued to suffer from severe back and knee pain when she returned to work in September 2013.  To accommodate her back and knee injuries,

8

Plaintiff requested WellPoint change her daily work schedule from 9 a.m. to 5 p.m. to 10 a.m. to 6 p.m. Such accommodation would have allowed Plaintiff to treat her injuries before work, including visiting her doctors and attending group exercise sessions to alleviate the pain she experienced throughout each workday.

43.     Defendants initially granted Plaintiff's request for the reasonable accommodation. However, in December 2013, in disregard for Plaintiff's disabilities and her articulated basis for seeking the accommodation, Defendants started to vary Plaintiff's work schedule most weeks. Defendants' unilateral change caused Plaintiff tremendous difficulty in scheduling required doctors' appointments.

44.     In or around October 2013, Plaintiff received an unwarranted, reduced annual salary increase notwithstanding her exemplary performance, experience, and educational background.

45.     On or around December 15, 2013, for no legitimate reason, Taveras changed Plaintiff's work duties by restricting her ability to take incoming calls.

46.     In or around December 2013, Taveras discriminated Plaintiff by handing her a self-evaluation with the instructions to complete it within thirty (30) minutes, despite the fact the Human Resources Department informed employees that the self-evaluation would not be due until the last day of December 2013. Upon information and belief, non-disabled employees and younger employees were not required to submit the self-evaluations prior to the last day of December 2013.

47.     Taveras also provided writing samples to non-disabled and younger employees, allowing them to simply copy the sample as their own self-evaluation. Plaintiff was never provided such sample from Taveras.

9

48.     In early 2014, Taveras continued to retaliate against Plaintiff when she gave her unjustifiable, poor performance evaluations.   As a result, Plaintiff received another reduced salary percentage increase.

49.     Plaintiff had not received negative reviews prior to her disability.

## REASSIGNMENT TO BROOKLYN

50.     On or around May 1, 2014, Plaintiff was notified she was to be transferred from the Flushing Office to the Brooklyn Office due to "business need."

51.     Defendants did not provide Plaintiff with a legitimate business reason for reassigning her to the Brooklyn Office, despite Defendants' knowledge that Plaintiff was still recovering from major trauma.

52.     As a result of the move, Defendants achieved their desire result.   Plaintiff experienced severe anxiety and stress when faced with choosing between enduring crippling pain on a daily basis or lose her job.   The reassignment would cause Plaintiff to spend four (4) hours each workday commuting to Brooklyn.   Such change would deny Plaintiff's ability to seek treatment for her disabilities before or after work.

53.     As a result of this stress and anxiety, Plaintiff developed depression and insomnia, two additional disabilities protected by the ADAAA, the NYSHRL, and the NYCHRL.

54.     Plaintiff requested to remain at the Flushing Office.   She informed Taveras and De Gutierrez that she could not travel more than an hour by public transportation due to her back and knee injuries.

10

55.     Taveras and De Gutierrez informed Plaintiff that she could stay in the Flushing Office if she submitted an accommodation form to WellPoint's Leave of Absence Department on or around May 7, 2014.

56.     Plaintiff submitted her accommodation form to WellPoint's Leave of Absence department, as per Taveras and De Gutierrez's instructions, on or about May 23, 2014.

## AGE DISCRIMINATION

57.     Plaintiff was reassigned to the Brooklyn Office effective June 2, 2014, despite the clear instructions provided to her from Taveras and De Gutierrez on how to avoid being transferred.

58.     On May 1, 2014, the same day that Plaintiff was notified that Defendants intended to transfer her to the Brooklyn Office, Taveras sent Plaintiff an email alleging Plaintiff had been late on three (3) occasions during the period of March 27, 2014 through April 23, 2014.

59.     Plaintiff had obtained Taveras' prior approval to arrive late to work each of the three (3) occasions.  Moreover, Taveras informed Plaintiff in or around October 2013, she would make up missed time by working additional time the same day or the next day if she was ever late to work.  Taveras' email message served no purpose other than to harass Plaintiff.

60.     On May 5, 2014, Taveras sent another harassing email, which notified Plaintiff that she had been late to work on April 29, 2014 and April 30, 2014 and threatened Plaintiff with corrective action if she did not "change this behavior."  Again, Plaintiff had obtained Taveras' prior approval before arriving late to work on April 29,

11

## FAILURE TO ACCOMMODATE

64.     On June 11, 2014, Defendants' Leave of Absence Department notified Plaintiff via email that she was eligible for an accommodation.

65.     Upon receiving the email, Plaintiff notified Taveras and requested reassignment to the Flushing Office as soon as possible.  Despite the clear urgency of the situation, Taveras intentionally and maliciously engaged in delay tactics.

66.      Taveras told Plaintiff she would contact Wei Yang, the Director of the Marketing Department at the Flushing Office, to inquire if Plaintiff's workstation was still available and would communicate Mr. Yang's response to Plaintiff within two (2) weeks.

67.     Despite Plaintiff's repeated inquiries, Taveras failed to communicate to Plaintiff about the available workstation as promised.

68.     On June 30, 2014, battling illness caused by Defendants' discriminatory and harassing conduct, Plaintiff went to the Brooklyn Office to work and speak to Taveras about being reassigned to the Flushing Office, since Taveras had ignored Plaintiff's previous phone calls.

69.     At the meeting, Taveras finally informed Plaintiff there was no available workstation available for her at the Flushing Office.  The statement was false sine Plaintiff later learned the workstation Plaintiff occupied before being reassigned to Brooklyn remained vacant.

70.     Further, in retaliation for Plaintiff exercising her rights under the ADAAA, Taveras unlawfully deleted Plaintiff's time report for June 30, 2014.  This caused Plaintiff great distress and humiliation, since she would never falsify time records.

13

71.     Soon after, Plaintiff notified Taveras and De Gutierrez in addition to suffering from bronchitis and back and knee pain, she now suffered from depression and urgently needed to see a psychologist.  She also informed them she could not see doctors if she continued to work at the Brooklyn Office, due to the lengthy commute. Consequently, De Gutierrez directed Taveras to look for a workstation for Plaintiff at the Flushing Office.

72.     During the same conversation, Taveras, in additional retaliation for Plaintiff seeking reassignment to the Flushing Office, again threatened Plaintiff with corrective action for alleged lateness.

73.     On July 7, 2014, Plaintiff fainted in the bathroom at the Brooklyn Office caused by overwhelming stress, insomnia, and asthma related to the retaliatory actions of Defendants.  Plaintiff was taken to the hospital by ambulance.

74.     As of July 18, 2014, more than one (1) month after WellPoint's Leave of Absence Department approved Plaintiff's eligibility for an accommodation for her back and knee injuries, Plaintiff still had not been transferred to the Flushing Office.

## RETALIATION FOR EXERCISING STATUTORY RIGHTS

75.     Plaintiff retained counsel in July 2014 due to Defendants' relentless discriminatory conduct.

76.     On July 22, 2014, Neil M. Frank, Plaintiff's counsel ("Counsel"), prepared and forwarded a letter to De Gutierrez informing her Plaintiff intended to pursue discrimination claims against WellPoint.

77.     On July 30, 2014, Counsel sent another letter to De Gutierrez requesting Plaintiff be reassigned to Flushing to accommodate her disabilities.

14

78.     On August 28, 2014, in retaliation for the correspondences it had received from Counsel, Defendants sent a letter to Plaintiff threatening to terminate her.

79.     On October 14, 2014, Plaintiff filed an EEOC charge of discrimination against Defendants based on age and/or disability discrimination and retaliation.

80.     On or around October 17, 2014, Defendants contacted Counsel to seek Plaintiff's return to work.  Defendants agreed to provide Plaintiff with unpaid leave until December 14, 2014.

81.     Defendant directed Plaintiff to report to work in Manhattan her first day back on December 15, 2014, "to complete mandatory compliance training" in preparation for her first three days back at work, despite Defendants knowledge her physical condition required her to avoid significant travel.

82.     As Plaintiff reviewed the training material that day, she asked Taveras the meaning of "OIG", which was visible on all of the documents.  Taveras stated she did not know and left the room, before returning with Yasmiry Nunoz ("Nunoz") a compliance officer.  Nunoz belittled Plaintiff, mocking her for not knowing the meaning of the abbreviation "after working for Defendants for so long," notwithstanding Plaintiff's more-senior supervisor being similarly unaware of its meaning.

83.     Nunoz and Taveras, in an attempt to harass and discriminate against Plaintiff, remained in the room speaking loudly in Spanish and hysterically laughing as Plaintiff took a training examination.

84.     On December 16, 2014, Plaintiff was treated unfairly after encountering Defendant Vargas for the first time since her return to work.  With no greeting, Vargas immediately embarrassed and harassed Plaintiff by accusing her of failing the training

15

examinations.  Vargas told Plaintiff she therefore would have to continue traveling to Manhattan to receive additional training until December 19, 2014.

85.     On December 17, 2014, Plaintiff met with Taveras, Nunoz, and Vargas to discuss continued training and her doctor's appointment scheduled for the following day. Plaintiff told them she would have to cancel her doctor's appointment since she had originally been told she would work in the Flushing office starting December 18, 2014. Vargas allowed Plaintiff to make the doctor's appointment, but required her to work that Saturday.

86.     Moreover, near the conclusion of the stressful meeting, Plaintiff was verbally and emotionally abused by Nunoz, Vargas, and Taveras.  Vargas falsely accused Plaintiff of "cutting her off" when Plaintiff tried to explain the problems she experienced with the training materials, and as a result, Plaintiff was subjected to almost ten (10) minutes of verbal abuse which left Plaintiff shell shocked and unable to speak.

87.     On January 5, 2015, for no reason but harassment, Plaintiff's morning break was changed to 10 a.m. from the previous 4 p.m., despite Plaintiff being scheduled to work at 10 a.m.

88.     On or around February 23, 2015, Plaintiff was subjected to a scathing phone call from Vargas, who alleged Plaintiff failed to submit her 2014 Performance Review.  Plaintiff, in a respectful and calm tone, as is her mild-mannered way, informed Vargas she had not received a thorough review and was not allowed to read Taveras' comments.  In retaliation, Vargas made Plaintiff travel to Manhattan at severe discomfort for a meeting with Vargas, Taveras, and Maria Munoz, at which time Plaintiff was given

16

a full review and was allowed to review Taveras' comments, at a cost of considerable pain and emotional distress.

**PRETEXT**

89.    On April 23, 2015, despite scoring close to 100% in all performance evaluations since her return from leave, Plaintiff was criticized by Taveras for her "transfer rate". Plaintiff explained to Taveras and Miguel Rodriguez, a team leader that the elevated rate was a result of a high influx of National Call Center members, mostly Spanish and Chinese-speaking, reaching her call line, although she was only supposed to work with English and Korean-speaking callers.

90.    On July 10, 2015, Vargas viciously harassed Plaintiff over the phone, accusing her of skipping time management training. Plaintiff had never been informed about this training, despite Vargas' lame contention that Plaintiff had been included in an email announcement.

91.    Later that day, Vargas again harassed Plaintiff, when she ordered her to attend a meeting on July 15 2015 at her office, again in Manhattan to discuss alleged call issues.

92.    On June 15, 2015, Plaintiff met with two of her evaluators, Miguel Rodriguez and Carlos Granizo, and, Vargas. Plaintiff was unfairly accused of four phone violations: 1) not greeting a member; 2) not keeping an appropriate pace; 3) not acknowledging the caller's concerns; 4) not providing a warm transfer to a pharmacy representative of Defendant; and 5) cutting off a member while he was speaking.

93.    All the allegations were embellishments, and Defendants failed to even consider Plaintiff's side of the story.

17

94.     Plaintiff took paid time off from August 3, 2015 to August 7, 2015 in order to escape the constant harassment she continued to receive from Defendants. Plaintiff did not have cell phone service during this time as she enjoyed her time off. When Plaintiff returned to Queens on August 9, 2015, she received a voicemail from Taveras again, ordering Plaintiff to appear in her Manhattan office on August 10, 2015.

95.     That date, Plaintiff met with Taveras and was asked to sign a series of forms.   Later that day, Plaintiff met with Taveras and Janet Krusche, Director of Defendant's Human Relations Department.  Plaintiff was terminated for the alleged "five call" issues which had been made known to her almost two months earlier.

96.     Based on the foregoing, Defendants discriminated against Plaintiff based on her disabilities and/or perceived disabilities in violation of the ADAAA, the NYSHRL, and the NYCHRL.

97.     Based on the foregoing, Defendants retaliated against Plaintiff for engaging in protected activity in violation of the ADA, the NYSHRL, and the NYCHRL.

98.     Based on the foregoing, Defendants discriminated and retaliation against Plaintiff based on her age in violation of the ADEA, the NYSHRL, and the NYCHRL.

### FIRST CLAIM FOR RELIEF
*(Violation of ADEA – Age Discrimination and/or Retaliation)*

99.     Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

100.    Defendants discriminated against Plaintiff based upon her age by replacing her with a younger employee and transferring Plaintiff to the Brooklyn Office instead of the younger employee.

18

101.     Because of Plaintiff's age, she was subjected to harassment and mistreatment and treated differently than younger employees.

102.     On July 22, 2014, Plaintiff engaged in protected activity under the ADEA when her attorney wrote to De Gutierrez regarding Plaintiff's intention to pursue an age discrimination claim.  Moreover, Plaintiff engaged in protected activity when she filed an EEOC charge of discrimination, based in part on age, against Defendants on October 14, 2014.

103.     Defendants were well aware of Plaintiff's protected activity as they were recipients of her formal and informal complaints of disparate treatment and retaliation.

104.     Defendants subjected Plaintiff to adverse employment actions because of her age and/or in retaliation for making formal and informal complaints regarding age discrimination; the Defendants transferred her to the Brooklyn Office, gave her de minimus raises, changed her schedule from week-to-week, unnecessarily criticized her, threatened to terminate her, deleted time sheets for days she worked, and ultimately terminated her as a result of exercising her protected rights.

105.     As a direct and proximate result of Defendants' aforementioned discriminatory and retaliatory conduct, Plaintiff has suffered and continues to accrue monetary damages, as well as damages for mental anguish and humiliation, and is entitled to damages, continuing until she secures substantially equivalent employment, which damages shall include statutory interest, liquidated damages, pre- and post-judgment interest, attorney's fees and the costs of bringing this action.

19

## SECOND CLAIM FOR RELIEF
*(Violation of ADAAA – Failure to Accommodate, Discrimination and/or Retaliation)*

106.    Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

107.    Plaintiff's medical conditions as described in this Complaint were disabilities within the meaning of the ADAAA.  Plaintiff could perform the essential functions of her position with a reasonable accommodation, which Plaintiff requested multiple times.

108.    Defendants were aware of Plaintiff's disabilities and need for reasonable accommodation and Defendants unlawfully refused to make reasonable accommodations for her disability.

109.    Defendants failed to engage in an interactive process to ascertain a reasonable accommodation for Plaintiff.  Rather than engage in a meaningful interactive process to reasonably accommodate Plaintiff's disabilities, Defendants unjustifiably denied her request for a reasonable accommodation.

110.    Plaintiff engaged in protected activity when she made multiple formal and informal requests for accommodation, including requesting reassignment to Defendants' Flushing Office and requesting a modified work schedule.  Plaintiff also engaged in protected activity by communicating her intention to pursue disability discrimination claims against Defendants by letter from her attorney to De Gutierrez dated July 22, 2014.

111.    Defendants were well aware of Plaintiff's protected activity as the recipient of her formal and informal requests for accommodation.

20

112.    Defendants subjected Plaintiff to adverse employment actions because of her disability and/or in retaliation for seeking a reasonable accommodation and making formal and informal complaints; the Defendants transferred her to the Brooklyn Office, gave her de minimus raises, changed her schedule from week-to-week, unnecessarily criticized her, threatened to terminate her, deleted time sheets for days she worked, and ultimately terminated her.

113.    Defendants systemically acted with malice and/or reckless indifference to Plaintiff's protected rights.

114.    As a direct and proximate result of Defendants' failure to accommodate and/or Defendants' discriminatory and retaliatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be established at trial.

### THIRD CLAIM FOR RELIEF
*(Violation of NYCHRL – Disability Discrimination, Age Discrimination, and/or Retaliation)*

115.    Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

116.    Plaintiff qualified as a person with a disability under the NYCHRL and Plaintiff's disability did not prevent her from satisfying the essential requisites of her job with a reasonable accommodation.

117.    Defendants failed to engage in an interactive process to ascertain a reasonable accommodation for Plaintiff.  Defendants were aware of Plaintiff's disabilities and showed reckless disregard for her protected rights.

21

118.    Defendants discriminated against Plaintiff based upon her age by replacing Plaintiff with a younger employee and transferring Plaintiff to the Brooklyn Office instead of such younger and less-senior employee.

119.    Because of Plaintiff's age, she was subjected to harassment and mistreatment, and treated differently than younger colleagues.

120.    Plaintiff engaged in protected activity when she made multiple formal and informal requests for accommodation, including requesting reassignment to Defendants' Flushing Office and requesting a modified work schedule.

121.    Plaintiff also engaged in protected activity under the NYCHRL by communicating her intention to pursue age and disability discrimination claims against Defendants by letter to De Gutierrez dated July 22, 2014.

122.    Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's protected rights.

123.    By the acts and practice alleged above, Defendants subjected Plaintiff to adverse employment actions because of her disability, age, and/or in retaliation for making formal and informal complaints of discrimination; the Defendants transferred her to the Brooklyn Office, gave her de minimus raises, changes her schedule from week to week, unnecessarily criticized her, threatened to terminate her, deleted time sheets for days she worked, and ultimately terminated her.

124.    As a proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional

distress, the costs of bringing this action, reasonable attorney fees and other punitive and compensatory damages.

### FOURTH CLAIM FOR RELIEF
*(Violation of NYCHRL – Aider and Abettor Liability)*

125.   Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

126.   By and through their course of conduct, the individual Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, and retaliation against Plaintiff in violation of the NYCHRL.

127.   As a direct and proximate result, Plaintiff has suffered and continues to suffer severe and mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

128.   Defendants Taveras, De Gutierrez, and Vargas' conduct constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### FIFTH CLAIM FOR RELIEF
*(Violation of NYSHRL – Disability Discrimination, Age Discrimination and/or Retaliation)*

129.   Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

130.   Plaintiff suffers from a perceived or actual disability as defined by NYSHRL.   Plaintiff's disability did not prevent her from satisfying the essential requisites of her job with a reasonable accommodation.

131.   Defendants failed to engage in an interactive process to ascertain a reasonable accommodation for Plaintiff. Defendants were aware of Plaintiff's disabilities and showed reckless disregard for Plaintiff's protected rights.

132.   By the acts and practice alleged above, Defendants violated the NYSHRL by discriminating against Plaintiff based upon her age by replacing Plaintiff with a younger employee and transferring Plaintiff to the Brooklyn Office instead of such younger and less-senior employee.

133.   Because of Plaintiff's age, she was subjected to harassment and mistreatment and treated differently than younger individuals.

134.   On July 22, 2014, Plaintiff engaged in protected activity under the NYSHRL when her attorney wrote a correspondence to De Gutierrez pertaining to Plaintiff's intention of pursuing an age and disability discrimination claim. Moreover, Plaintiff engaged in protected activity when she filed an EEOC charge of discrimination against Defendants on October 14, 2014.

135.   Defendants were well aware of Plaintiff's protected activity as the recipient of her formal and informal complaints of discrimination.

136.   By the acts and practice alleged above, Defendants violated the NYSHRL when they subjected Plaintiff to adverse employment actions because of her disability, age and/or in retaliation for making formal and informal complaints of discrimination; the Defendants transferred her to the Brooklyn Office, gave her de minimus raises, changed her schedule from week-to-week, unnecessarily criticized her, threatened to terminate her, deleted time sheets for days she worked, and ultimately terminated Plaintiff as a result of her requests for accommodation.

24

137.    As a proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered damages as a result of Defendants' unlawful acts, including compensatory damages, past and future lost wages and benefits, past and future physical and emotional distress.

### SIXTH CLAIM FOR RELIEF
*(Violation of NYSHRL –Aider and Abettor Liability)*

138.    Plaintiff incorporates by reference and repeats and re-alleges each and every allegation as if more fully set forth herein.

139.    By and through their course of conduct, the individual Defendants knowingly or recklessly aid and abetted the unlawful employment practices, discrimination and/or retaliation against Plaintiff in violation of the NYSHRL.

140.    The acts undertaken by the named Defendants were committed during the scope of their employment.

141.    As a result of Defendants Taveras, De Gutierrez, and Vargas' conduct, Plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses in a sum to be determined at trial, with interest, costs and disbursements.

### DEMAND FOR JURY TRIAL

1.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

    i.    declaring Defendants violated the aforementioned statutes;

    ii.    awarding equitable relief;

25

iii.    awarding compensatory and punitive damages, where applicable, in an amount to be determined at trial;

iv.    awarding back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendant's unlawful acts;

v.    awarding punitive damages;

vi.    awarding Plaintiff's cost of this suit;

vii.    awarding reasonable attorneys' fees;

viii.    awarding pre- and post-judgment interest; and

ix.    awarding such other and further relief as the court deems just and proper.

Dated: Farmingdale, New York
August 26, 2015

FRANK & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By: _Neil M. Frank_

Neil M. Frank, Esq.
500 Bi-County Blvd., Ste. 465
Farmingdale, New York 11735
nfrank@laborlaws.com
Tel.: (631) 756-0400
Fax: (631) 756-0547

# EXHIBIT A

EEOC Form 161-B (11/09)

**U.S. E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

## N**OTICE OF** R**IGHT TO** S**UE** *(I*SSUED ON *R*EQUEST)

| | |
|---|---|
| To: **Dong-Julia Sun-Lee**<br>**65-22 Parsons Blvd.**<br>**Apt. 1-A**<br>**Flushing, NY 11365** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2015-00203** | **Rudolph White,**<br>**Investigator** | **(212) 336-3753** |

*(See also the additional information enclosed with this form.)*

**N**OTICE TO THE **P**ERSON **A**GGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Kevin J. Berry,**
**District Director**

2 9 MAY 2015
*(Date Mailed)*

cc:

**THE WELLPOINT COMPANIES, INC.**
**4425 Corporation Lane, #300**
**Virginia Beach, VA 23462**

Jon Stockman, Esq.
FRANK & ASSOCIATES, P.O.
500 Bi-County Boulevard, Suite 112N
Farmingdale, NY 11735